**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **PATTI SHAPIRO** | **CIVIL ACTION NO.:** |
| **Plaintiff,** | **3:17-cv-01497 (AWT)** |
| **v.** | |
| **TIBBETTS KEATING & BUTLER, LLC, MARVIN SHAPIRO AND GERTRUDE SHAPIRO** | |
| **Defendants.** | **APRIL 10, 2019** |

## OBJECTION TO PLAINTIFF'S MOTION TO COMPEL

The defendant, Tibbetts Keating & Butler, LLC ("TKB"), hereby submits this objection to the plaintiff's February 27, 2019 motion to compel discovery compliance. See Docket Entry No. 47.

### I.   BACKGROUND

#### A. Facts

In her January 9, 2018 amended complaint, the plaintiff alleges that Marvin and Gertrude Shapiro are the parents of her former husband, Jonathan Shapiro (Jonathan). *Amended Complaint, Factual Background, ¶ 9-10; Docket Entry No. 27.* She alleges that during the course of her marriage, Marvin and Gertrude provided financial assistance to Jonathan. *Amended Complaint, Factual Background, ¶ 10.* According to the plaintiff, this financial assistance was memorialized in the form of "documents misleadingly styled as promissory notes." *Amended Complaint, Factual Background, ¶ 13.* More specifically, the plaintiff alleges that Gertrude and Marvin provided five (5) promissory notes during the period from 1997 to 2013. *Amended Complaint, Factual*

*Background, ¶ 14-20.* The plaintiff's fraud claims in the present case are based specifically on a 2002 promissory note ("2002 note").

On December 19, 2013, the plaintiff commenced an action in California for the dissolution of her marriage from Jonathan. *Amended Complaint, Factual Background, ¶ 26.* According to the plaintiff, an attorney employed by TKB, Meredith McBride, mailed correspondence to her on July 15, 2015 (the "2015 letter") seeking to collect on the five promissory notes and threatening court action. *Amended Complaint, Factual Background, ¶¶ 27, 28.* Although not specifically alleged in the amended complaint, TKB sent the July 2015 letter in connection with its representation of Marvin. *Exhibit 5 to Amended Complaint.*

The plaintiff suggests that the July 2015 letter was improper because, by then, the statute of limitations set forth in Connecticut General Statutes § 42a-3-118 barred any action to enforce the promissory notes, including the 2002 note. *Amended Complaint, Factual Background, ¶¶ 22-24,29.* The plaintiff also alleges that the 2015 letter misstated the alleged debt and failed to acknowledge that the notes were otherwise deficient. *Amended Complaint, Factual Background, ¶ 29.*

The plaintiff claims that, on March 9, 2017, the court in her California divorce case issued a tentative ruling regarding the division of assets. She alleges that the only item of value the court awarded to her was the cash value of certain life insurance policies. *Amended Complaint, Factual Background, ¶¶ 30-32.* The plaintiff claims that the court also found that she and Jonathan were jointly and severally liable for the obligations associated with the promissory notes. *Amended Complaint, Factual*

*Background, ¶ 33.* She further alleges that the divorce court issued an order that if "[Marvin and Gertrude] obtain a judgment against and/or collect on [the debt from the notes] from either party, the other is ordered to indemnify that party for one-half of any actual amounts collected by [Marvin and Gertrude*]." Amended Complaint, Factual Background, ¶ 33.*

In her motion to compel, the plaintiff asserts that in early May 2017, Jonathan filed an affidavit in the divorce case. *Motion to Compel, p. 3.* That affidavit, which appears to have been signed on May 5, 2017, was apparently filed in connection with Jonathan's request to "freeze/use the proceeds in the two life insurance policies to pay the [2002 note] that I know my parents are going to collect . . . ." *Exhibit 7 to Amended Complaint, p. 1.* In his affidavit, Jonathan requests "that the cash values [of the life insurance policies] be used to repay [the 2002 note] that must irrevocably be repaid." *Exhibit 7, p. 4.* In other words, on May 5, 2017, Jonathan acknowledged that he and the plaintiff were still obligated to satisfy the 2002 note.

In June 2017, TKB was retained by Jonathan Shapiro to author an opinion letter regarding whether the statute of limitations would bar an action to collect on the 2002 note. To that end, the plaintiff claims that on June 13, 2017, another attorney with TKB, Thomas Noonan, sent correspondence (the "2017 letter") to Jonathan's attorney in the California divorce case that provided a legal opinion regarding the collectability of the notes. *Amended Complaint, Factual Background, ¶ 41*; *Exhibit 8 to Amended Complaint.*

3

The plaintiff does not allege that TKB sent the 2017 letter to her. Rather, she contends that, "[o]n information and belief, [TKB] knew that its June 13, 2017 letter would be provided to [her] by being filed by Jonathan in the Divorce Action, where it would be used to deprive [her] of the value of the life insurance polices that had been awarded to her in that case." *Amended Complaint, Factual Background, ¶ 42*. The plaintiff further alleges that this "letter was intended to send a message to [her] that [TKB] was still seeking collection on the notes on behalf of [Marvin and Gertrude]." *Amended Complaint, Factual Background, ¶ 42*. The plaintiff also claims that "the letter materially misstates the law [and] misrepresents the validity of the debt, all in an attempt to unfairly coerce [her] into conceding an unenforceable debt." *Amended Complaint, Factual Background, ¶ 43.*

According to the plaintiff, Jonathan's attorney filed the June 2017 letter in the divorce action. *Amended Complaint, Factual Background, ¶ 46*. The plaintiff also alleges that the court in the divorce case "ruled that the life insurance funds would be placed in Jonathan Shapiro's attorney's escrow account," which she asserts (without support) was "a result of the misrepresentations by all Defendants concerning the invalid debts." *Amended Complaint, Factual Background, ¶ 47.* The plaintiff does not allege that the court in the divorce action relied in any way on the June 2017 letter.

Notably, the plaintiff makes no reference in her complaint to a June 19, 2017 hearing in the divorce case. That hearing resulted in the order requiring the life insurance funds to be placed in the escrow account of Jonathan's divorce attorney, Iris Finsilver. The hearing in question was held before the Hon. Dale R. Wells. At the

4

hearing, Judge Wells ordered that the life insurance proceeds be held in escrow

pending further court order to ensure that the funds would be available to pay the 2002

note *if he later determined that the note was enforceable*. *6/19/17 Hearing Transcript,*

*attached hereto as Exhibit A*, *p. 17*. Judge Wells expressed the following rationale for

his order as follows:

> Ms. Eyre (plaintiff's attorney), the best order for me to make on the
> insurance proceeds, held in trust, and then assuming that Ms. Finsilver
> (Jonathan's attorney) produces adequate documentation to show that
> this must be paid and is being demanded to be paid by the parents in
> request for order to disburse those funds, that I could disburse those
> funds, but certainly not just based on him saying, "They say I have to
> pay it.". . . .  The point is that this is family law. I have to make
> judgments based on the respective credibility of the parties.  What I
> have here is him saying, "I don't know if I have to pay the $276,000,
> but I know I have to pay the $392,000." That's what I have here. *I don't*
> *know if it is true or not,* but I could order the money from the insurance
> proceeds be held in trust and not distributed except on order of the
> Court, and then it is up to Ms. Finsilver to bring [a request for order] to
> convince me that it has to be paid, that there is no way around paying
> it, *and for you to convince me that it does not have to be paid so that I*
> *could then decide whether to distribute it or not.* (Emphasis added).

*Attached Exhibit A, pp. 14-15*. Judge Wells also noted that if Jonathan's attorney did not

file a request for order with respect to the insurance funds, then the plaintiff's attorney in

the divorce case could file a request to have the funds released. *Attached Exhibit A, p.*

*26*. Further, Judge Wells stated that "[i]f I put the entire sum of money into a trust

account and say it doesn't get spent until I say, then Ms. Finsilver could come in and

show me why it qualifies under my ruling, and you could show me why it does not. *And*

*if you show me that this is a statute of limitations and his parents cannot collect, then I*

*could say, 'Sorry, mom and dad. Too bad.'"* (Emphasis added). Exhibit A, p. 16.

In short, there is no evidence that Judge Wells' decision to place the insurance proceeds in trust was due to Attorney Noonan's 2017 letter. Indeed, Judge Wells did not make a single reference to the 2017 letter during the hearing. There is also no indication that Judge Wells accepted Attorney Finsilver's argument that collection on the notes was not time-barred. In fact, a comprehensive review of the transcript makes clear that Judge Wells did not accept the claim that the notes were enforceable. Instead, Judge Wells' order was simply a stop-gap measure to ensure that the funds were available if he ultimately determined that the 2002 note had to be repaid.

The plaintiff alleges that, on September 5, 2017, TKB filed a lawsuit (the "2017 lawsuit") against Jonathan in the Connecticut Superior Court on behalf of Marvin and Gertrude seeking to recover on a 2002 promissory note. *Amended Complaint, Factual Background, ¶ 49; Exhibit 11 to Amended Complaint.* Although the complaint in the 2017 lawsuit alleged that the plaintiff owed the amount associated with the 2002 promissory note, she was not named as a defendant. *Amended Complaint, Factual Background, ¶ 49.* The plaintiff claims that this "was a collusive lawsuit designed by [Marvin and Gertrude] and [TKB] to deliver a judgment against Jonathan" for Jonathan's "use in the Divorce Action to further deprive [the plaintiff] of the funds obtained from the life insurance policies . . . ." *Amended Complaint, Factual Background, ¶ 53.* The plaintiff further alleges that, "[s]uch a judgment, even though never intended by [Marvin and Gertrude] to be enforced against . . . [Jonathan], would require [the plaintiff] to indemnify [Jonathan] for their bogus claim on the expired 2002 Note under the court's ruling in the divorce action." *Amended Complaint, Factual Background, ¶ 53.*

6

Notably, the plaintiff does not, and cannot, claim that a judgment actually entered in the 2017 lawsuit. Indeed, the court should take judicial notice of the fact that the 2017 lawsuit was withdrawn within six weeks, on October 13, 2017 (long before the plaintiff's amended complaint in this case) without the entry of a judgment.[1] Indeed, in her responses to TKB's requests for admission, the plaintiff admits that the 2017 lawsuit did not result in a judgment in favor of Marvin and/or Gertrude. *Plaintiff's Responses to Requests for Admission, attached hereto as Exhibit C, Request No. 18, pp. 8-9.*

Although not alleged in her amended complaint, the plaintiff now argues that the lawsuit was designed to give Jonathan "the opportunity to acknowledge the debt [and] revive the statute of limitations . . . ." *Motion to Compel, p. 4.* In other words, the plaintiff insists that the 2017 lawsuit was filed so that Jonathan would have an opportunity to acknowledge the debt and thus waive the statute of limitations on behalf of both himself and the plaintiff. As noted above, however, Jonathan had already acknowledged the debt in his May 2017 affidavit. Further, and as will be discussed below, Connecticut law is clear that Jonathan does not have the authority to waive the statute of limitations on behalf of the plaintiff. Finally, the plaintiff has not argued, and there is nothing to suggest, that Marvin and Gertrude have attempted to use Jonathan's acknowledgment of the debt to overcome the statute of limitations. As such, the plaintiff's theory regarding the 2017 lawsuit has not been advanced by anyone other than her.

---

[1] The Withdrawal of Action that was filed in the 2017 lawsuit is attached hereto as Exhibit B. "[F]ederal courts are empowered to take judicial notice of state court records and decisions." (Internal quotation marks omitted) *Sheppard v. Lee,* 2011 WL 5314450, *1 n.2 (S.D.N.Y. November 7, 2011).

Finally, it should be noted that, in response to TKB's requests for admission, the plaintiff admits the following: (1) she was not aware of the 2017 lawsuit until after it was withdrawn; (2) she lacks personal knowledge of any judgment in favor of Marvin and Gertrude on the promissory notes referenced in her amended complaint; (3) she has not indemnified Jonathan for any payments that he has made to Marvin or Gertrude on the promissory notes referenced in her amended complaint; and (4) she lacks personal knowledge of any judicial determination that Marvin and Gertrude are entitled to a judgment on the promissory notes. *Attached Exhibit C, Request Nos. 13-17, pp. 6-8.*

### B. Summary of current claims

The plaintiff's claims against TKB are set forth in Counts One, Three, Four and Five of the amended complaint. The plaintiff's claims against Marvin and Gertrude, which sound in fraud, are set forth in Counts Two, Three, and Five.

In her first count, the plaintiff alleges that the July 2015 and June 2017 letters violated certain provisions of the FDCPA. *Amended Complaint, Count One, ¶ 63-66.* The instant motion to compel, however, does not pertain to discovery associated with the plaintiff's first count. Instead, the plaintiff's motion to compel is related to her third, fourth, and fifth counts.

On their face, the plaintiff's claims against TKB in Counts Three, Four and Five are based exclusively on the 2017 lawsuit. In the third count, the plaintiff alleges that TKB engaged in fraud by filing the 2017 lawsuit. *Amended Complaint, Count Three.* In Count Four, the plaintiff claims that, by filing the 2017 lawsuit, TKB aided and abetted the fraud committed by Marvin and Gertrude. *Amended Complaint, Count Four.*  Finally,

8

in Count Five, the plaintiff claims that TKB conspired to commit fraud with Marvin and Gertrude by filing the 2017 lawsuit. *Amended Complaint, Count Five.*

Notwithstanding the plain language of Counts Three, Four, and Five, the plaintiff argues, and the Court, *Thompson, J.*, seems to have agreed,[2] that the 2017 lawsuit is not the sole basis for these three counts. While TKB disagrees with this interpretation, the only other conduct referenced in the amended complaint attributable to TKB consists of the 2015 letter and the 2017 letter. As such, even an expansive reading of the amended complaint limits the allegedly fraudulent conduct to the following: (1) the 2015 letter; (2) the 2017 letter; and (3) the 2017 lawsuit.

It should also be noted that, in her Rule 26(a) Disclosure, the plaintiff indicates that she has incurred "$195,500 in actual damages, representing one-half of the total cash value as of March 10, 2017 (date of the award) of two Berkshire life insurance policies and one First National life insurance policy." *Plaintiff's Disclosure, attached hereto as Exhibit D.* On January 31, 2019, in response to TKB's requests for admission, the plaintiff admitted that the $195,500 in "actual damages" refers to the life insurance policies that she was awarded by the California divorce court and that were subsequently placed in Attorney Finsilver's escrow account. *Attached Exhibit C, Request Nos. 2 and 3, p. 2.* Accordingly, any damages arising from the plaintiff's third, fourth, and fifth counts stem entirely from the divorce court's order that the insurance funds be placed in escrow.

---

[2] In an order denying TKB's motion to dismiss the amended complaint, the Court, *Thompson, J.*, agreed with the plaintiff that the factual basis for her third, fourth, and fifth counts consist of more than just the 2017 lawsuit. *Docket Entry No. 38.*

9

Finally, the plaintiff has reached a settlement with Marvin and Gertrude. *See Docket Entry No. 30*. While plaintiff's counsel has been unwilling to share the details of that settlement with undersigned counsel, it seems likely that the settlement in question requires Marvin and Gertrude to forgo any claims against the plaintiff based on the promissory notes.

## II.   LAW AND ARGUMENT

The plaintiff's motion to compel pertains exclusively to material associated with her fraud claims in Counts Three, Four, and Five. As will be discussed below, the court should deny the plaintiff's motion on the ground that her fraud claims are completely lacking in merit. As a result, any discovery requests pertaining to those claims are not proportional to the needs of the case. Further, the discovery material in question is subject to the attorney-client privilege, the work-product doctrine, and/or Rule 1.6 of the Rules of Professional Conduct.

### A. The plaintiff's motion should be denied because there is no merit to the her fraud claims.

Fed. R. Civ. Proc. 26(b)(1) provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As discussed, the plaintiff's third, fourth, and fifth counts, which sound in fraud, are based on conduct associated with the 2017 lawsuit, the 2017 letter, and the 2015 letter. That

conduct, however, is insufficient to support a viable fraud claim. As such, discovery of the requested material is not proportional to the needs of the case.

### 1. The 2017 lawsuit is not sufficient to form the basis for a claim sounding in fraud.

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted) *Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005). "A plaintiff who has not suffered damage or injury cannot pursue an action at law or in equity for nominal damages resulting from fraudulent actions." *Kilduff v. Adams, Inc.*, 219 Conn. 314, 329 (1991).

In the present case, the plaintiff admits that she was not aware of the 2017 lawsuit before it was withdrawn. As a result, she could not have detrimentally relied on the allegations in the complaint or Jonathan's answers thereto. Further, the lawsuit did not result in a judgment for Marvin and Gertrude. Thus, the plaintiff cannot seek damages in this action based on the outcome of the 2017 lawsuit. Put simply, it caused her no harm of any kind.

Notwithstanding the above, the plaintiff now argues that the purpose of the 2017 lawsuit was to revive the statute of limitations associated with the 2002 note by having Jonathan affirmatively waive it. As the plaintiff acknowledges in her brief, "[t]he Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the

11

defense can be lost by an unequivocal acknowledgement of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account." *Zapolsky v. Sacks*, 191 Conn. 194, 198 (1983). Importantly, this "unqualified recognition" does not need to occur in the context of a formal lawsuit. To that end, Jonathan acknowledged the debt, without qualification, in his May 2017 affidavit. Notably, TKB was not involved in the creation of this affidavit and was not actively representing Jonathan, Marvin, or Gertrude at the time the affidavit was filed. Indeed, a review of TKB's privilege log reveals that there are no communications in TKB's file from April or May of 2017. *Exhibit A to Motion to Compel.* Accordingly, to the extent that Jonathan was capable of waiving the statute of limitations on behalf of the plaintiff, which is contrary to established law, he did so long before the 2017 lawsuit was filed and without the assistance or counsel of TKB.

Further, and perhaps more importantly, the law is clear that Jonathan cannot waive the statute of limitations on behalf of the plaintiff. In *Apuzzo v. Hoer,* 125 Conn. 196, 201-202 (1939), the court overruled prior caselaw holding that one obligor on a debt can unilaterally waive the statute of limitations as to other obligors on the same debt. "The principle upon which [the prior rule] proceeds, that out of the community of interest represented by the joint obligation arises an agency on the part of each obligor to toll the statute as to the other by part payment or acknowledgment of the debt, clearly has little or no foundation in the actual intent of the parties or in the nature of their relationship." (Internal quotation marks omitted) Id., 202. "The rule is undoubtedly capable of working great hardship; one joint obligor, lulled into a sense of security by

12

the running of the statute against the debt, may suddenly be confronted with an

obligation which he had reason to believe had been barred many years before, but

which he finds has been kept alive by an acknowledgment or part payment made by his

codebtor, perhaps even without his knowledge. These reasons for repudiating the rule

apply with equal force, whether the full statutory period or but a part of it, as here, has

elapsed prior to the promise made. . . . In so far as the earlier decisions of this court

hold that without more a new promise, payment on account, or acknowledgment of the

debt by a joint obligor, is sufficient to toll the running of the statute as against his joint

obligor or obligors, they are overruled." (Citation omitted; internal quotation marks

omitted) Id.

Given the decision in *Apuzzo*, which remains the law in Connecticut, Jonathan

did not have the authority to waive the statute of limitations on behalf of the plaintiff.

Consequently, the plaintiff's theory as to the purpose of the 2017 lawsuit is completely

lacking in merit. Indeed, there is simply no way that Jonathan's acknowledgment of the

debt can be used against the plaintiff. As such, the plaintiff cannot rely on the 2017

lawsuit to establish damages in connection with her fraud claims. Consequently, the

2017 lawsuit cannot form the basis for a viable fraud claim. See *Kilduff v. Adams, Inc.*,

supra, 219 Conn. 329 ("[a] plaintiff who has not suffered damage or injury cannot

pursue an action at law or in equity for nominal damages resulting from fraudulent

actions").

Finally, the plaintiff admits the following in response to TKB's requests for

admission: (1) she lacks personal knowledge of any judgment in favor of Marvin and

13

Gertrude on the promissory notes referenced in her amended complaint; (2) she has not indemnified Jonathan for any payments that he has made to Marvin or Gertrude on the promissory notes referenced in her amended complaint; and (3) she lacks personal knowledge of any judicial determination that Marvin and Gertrude are entitled to a judgment on the promissory notes. Further, the plaintiff does not argue, and there is nothing to indicate, that Marvin or Gertrude have advanced the theory that Jonathan's acknowledgment of the debt served to waive the statute of limitations on behalf of the plaintiff. As such, the plaintiff's characterization of the 2017 lawsuit is, at best, pure speculation.

### 2. The 2017 letter is not sufficient to form the basis for a claim sounding fraud.

As discussed, a claim for fraud requires, *inter alia*, a "false representation made as a *statement of fact*" and detrimental reliance upon that statement. (Emphasis added) *Weinstein v. Weinstein*, supra, 275 Conn. 685. There are no set of circumstances under which the 2017 letter could satisfy either condition. Indeed, the 2017 letter is explicitly a legal opinion regarding whether the 2002 note is barred by the statute of limitations. As such, it does not qualify as a statement of fact. Further, the plaintiff neither alleges nor argues that she detrimentally relied on the 2017 letter. Finally, the plaintiff makes no effort to explain how a legal opinion could form the basis for a cause of action in fraud and she does not cite to any caselaw supporting such a position.

Notwithstanding the above, the plaintiff appears to argue that the 2017 letter was fraudulent because it improperly suggested to the trial court that TKB was actively representing Marvin and Gertrude in a manner that was adversarial to Jonathan. *Motion*

14

*to Compel, p. 19.* Attorney Noonan explicitly states in the 2017 letter that it was authored pursuant to a request from Iris Finsilver, Jonathan's attorney in the divorce case. Specifically, the 2017 letter to Attorney Finsilver begins as follows: "*You* have asked me to review certain documentation emailed to me . . . and provide a legal opinion about the collectability of the demand note dated December 12, 2002." (Emphasis added). *Exhibit 8 to Amended Complaint.* It is therefore difficult to imagine how the 2017 letter could have suggested to the court that TKB was actively representing Marvin and Gertrude in a manner that was adversarial to Jonathan.[3]

Additionally, the California trial judge acknowledged that the relationship between Jonathan and his parents with respect to the promissory notes may not have been adversarial. At the June 19, 2017 hearing, Judge Wells noted that "when a couple that is married borrows from one set of parents, and then they get a divorce, there is the possibility that, yeah, that person is going to pay the parent back everything, and they will return the money to you. That is always a possibility. I don't know of a way to avoid it . . . ." *Attached Exhibit A, p. 26.* This language demonstrates that Judge Wells recognized the possibility that Jonathan and his parents were not adversaries with respect to the promissory notes. This recognition, however, did not seem to have an impact on his decision to place the life insurance funds in escrow.

---

[3] In the 2017 letter, Attorney Noonan notes that TKB "previously" represented Marvin and Gertrude in connection with the 2015 letter. Nothing about this statement would have led the court to believe that, at the time of the 2017 letter, TKB was actively representing Marvin and Gertrude with respect to their efforts to collect on the promissory notes.

### 3. The 2015 letter is not sufficient to form the basis for a claim sounding in fraud.

The plaintiff appears to argue that her fraud claims are based, in part, on TKB's 2015 letter. As noted, however, "[a] plaintiff who has not suffered damage or injury cannot pursue an action at law or in equity for nominal damages resulting from fraudulent actions." *Kilduff v. Adams, Inc.*, supra, 219 Conn. 329. To that end, a deprivation of the life insurance funds in the divorce case is the only injury that the plaintiff claims she sustained as a result of the alleged fraud. The plaintiff has not alleged, and she does not argue in her motion to compel, that the 2015 letter had any impact on that decision. Indeed, there is nothing to suggest that the California court considered the 2015 letter for purposes of ordering that the life insurance funds be placed in escrow. Accordingly, the 2015 letter cannot form the basis for a viable fraud claim.

### B. The plaintiff's motion to compel should be denied because she seeks material that is protected by the attorney-client privilege and the work-product doctrine.

TKB has asserted the attorney-client privilege and the work-product doctrine with respect to communications with Jonathan and his parents during the course of TKB's representation of them. To that end, TKB represented Marvin and Gertrude in connection with the 2015 letter and the 2017 lawsuit. TKB represented Jonathan in connection with the 2017 letter.

In her motion to compel, the plaintiff argues that TKB's assertion of the attorney-client privilege and the work-product doctrine should be disregarded because it is

16

unclear whether TKB represented anyone other than Marvin and Gertrude. To begin, counsel for TKB specifically informed plaintiff's counsel that TKB represented both Jonathan Shapiro and his parents at various times. *Exhibit F to Motion to Compel, p. 4.* Further, TKB's privilege log sufficiently demonstrates that TKB had an attorney-client relationship with both Jonathan and his parents. *Exhibit A to Motion to Compel.*

The plaintiff also insists that TKB may have waived the privilege by communicating with individuals outside of the attorney-client relationship. To that end, some of the communications at issue were sent to, or received from, Attorney David McCarthy, Attorney Iris Finsilver, Attorney Shia Shapiro, and David Himmelreich, each of whom was an agent and/or attorney of either TKB, Jonathan, or Marvin and Gertrude. "[S]tatements made in the presence of a third party are usually not privileged because there is then no reasonable expectation of confidentiality . . . . Nonetheless, [t]he presence of certain third parties . . . who are agents or employees of an attorney or client, and who are necessary to the [legal] consultation, will not destroy the confidential nature of the communications." (Citations omitted; internal quotation marks omitted) *Harrington v. Freedom of Information Commission*, 323 Conn. 1, 25 (2016).

To begin, the privilege log references several emails between Attorney Thomas Noonan and Attorney David McCarthy regarding the present case. As noted, Attorney Noonan is an associate with TKB. Attorney McCarthy is "of counsel" for TKB. The communications between Attorney Noonan and Attorney McCarthy pertained to legal issues in this matter. Further, the communications occurred before undersigned counsel was retained and while TKB was essentially acting as its own attorney. As a result,

17

Attorney Noonan's communications with Attorney McCarthy fall squarely within the scope of the attorney-client privilege and the work-product doctrine.

Further, TKB's privilege log references a number of communications with Attorney Iris Finsilver, Jonathan's attorney in the California divorce case. As Jonathan's attorney, she was necessarily acting as his agent. As such, any communications between TKB and Attorney Finsilver while TKB represented Jonathan fall within the scope of the attorney-client privilege and/or the work-product doctrine.

The privilege log also references a number of communications with David Himmelreich, who was Marvin's financial advisor. In that capacity, Mr. Himmelreich was familiar with the debts referenced in the promissory notes and was occasionally tasked with communicating with TKB regarding the collection of those notes and/or the 2017 lawsuit. Accordingly, Mr. Himmelreich qualifies as Marvin's agent. As such, communications with him pertaining to the 2015 letter and/or the 2017 lawsuit are protected by the attorney-client privilege and/or the work-product doctrine.[4]

Finally, the privilege log references a single communication with Attorney Shia Shapiro that falls within the scope of the attorney-client privilege and work-product doctrine. *Privilege Log No. 41.* This communication, a July 14, 2017 email and attached letter, pertained to Jonathan's waiver of a conflict of interest so that TKB could represent Marvin and Gertrude in the Connecticut lawsuit. TKB felt that this waiver was

---

[4] The privilege log also references an August 11, 2015 email from Charles Falzone to Attorney McBride and Mr. Himmelreich. *Attached Exhibit A, Entry No. 106.* At the time, Mr. Falzone was associated with the same company with which Mr. Himmelreich was associated and his email was sent on behalf of Mr. Himmelreich. As such, Mr. Falzone also qualifies as Marvin's agent for purposes of the attorney-client privilege and/or the work-product doctrine.

necessary given its representation of Jonathan with respect to the 2017 letter in the California divorce case. To that end, Attorney Shapiro was advising Jonathan with respect to the California divorce case. As such, he qualifies as Jonathan's agent for purposes of the attorney-client privilege and/or work-product doctrine.[5]

### C. The plaintiff has not met her burden of establishing that the crime-fraud exception applies to the communications at issue.

The plaintiff insists that, even if the communications at issue are privileged, those communications should be stripped of their privilege pursuant to the crime-fraud exception. "[T]he crime-fraud exception permits abrogation of the attorney-client privilege solely upon a determination by the trial court that there is probable cause to believe that the privileged communications were made with the intent to perpetrate a civil fraud and that the communications were made in furtherance of that fraud." *Olson v. Accessory Controls & Equip. Corp.*, 254 Conn. 145, 174 (2000). "This exception to the attorney-client privilege is a limited one. . . . [T]he appropriate inquiry under the probable cause standard targets the client's intent in obtaining legal advice; only if there is probable cause to believe that the client intended to perpetrate a fraud does the exception properly come to bear." (Citation omitted) Id.

"Even if probable cause exists to believe that the client intended to perpetrate a fraud, the exception is curtailed by the second requirement that the communications

---

[5] Although not addressed in the plaintiff's motion to compel, the privilege log also references a number of TKB employees, including Sharon Phelan, Bryson Wilson, Robert Becker, and Helena Bottone. *Attached Exhibit A, Entry No. 25.* The individuals in question are non-attorney employees of TKB and, as such, qualify as TKB agents for purposes of the attorney-client privilege and work-product doctrine.

sought in discovery were made in furtherance of the fraud. . . . [T]he Second Circuit Court of Appeals [has] rejected a 'relevant evidence' test under the second prong of the exception, adhering instead to a strict 'in furtherance' requirement. . . . [T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud. . . . Mere relevance is insufficient; there must be a showing that the communications at issue were made with an intent to further an unlawful act." (Citations omitted; internal quotation marks omitted) Id., 175-76.

In the present case, the plaintiff seems to argue that the following conduct constitutes a civil fraud: (1) "[Marvin and Gertrude] gave the appearance of attempting to collect from Jonathan and [the plaintiff]; however, with the other hand they continued to give money to Jonathan; (2) "TKB assisted [Marvin, Gertrude] and Jonathan by providing a legal opinion as to the collectability of the promissory notes" and "that opinion materially misrepresented the applicability of the statute of limitations and the amount of the debts allegedly owed"; (3) "TKB then colluded with Jonathan [and his parents] to create the illusion of an adversarial collection proceeding in Connecticut. Upon belief, this collusive lawsuit was designed to elicit an unequivocal acknowledgment of the debt by Jonathan" and "was a fraudulent attempt to waive the statute of limitations on the collectability of the Notes and to drain the life insurance proceeds so that [the plaintiff] would be left with nothing." *Motion to Compel, p. 14.*

To begin, it is unclear how the first course of conduct referenced above constitutes a fraud. To that end, in the May 2017 affidavit that Jonathan filed with the California divorce court, he explicitly acknowledged that Marvin and Gertrude insisted

20

that the 2002 note had to be repaid *and* that they continued to give him money after he separated from the plaintiff. *Exhibit 7 to Amended Complaint*. As such, there was no attempt to hide this information from the California court. Further, and as discussed *infra*, neither the 2017 letter nor the 2017 lawsuit meet the elements for a cause of action sounding in fraud. Accordingly, the plaintiff has failed to meet her burden of showing that TKB, Jonathan, Marvin, and/or Gertrude intended to perpetrate a civil fraud. Likewise, she has made no effort to show that the communications at issue were "in furtherance of" of a civil fraud. The plaintiff has therefore failed to show that "there is probable cause to believe that the privileged communications were made with the intent to perpetrate a civil fraud and that the communications were made in furtherance of that fraud." *Olson v. Accessory Controls & Equip. Corp.*, supra, 254 Conn. 174.

### D. The plaintiff's motion should be denied because she seeks information protected from disclosure pursuant to Rule 1.6 of the Rules of Professional Conduct.

Rule 1.6(a) of the Rules of Professional Conduct provides: "A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by subsection (b), (c), or (d). Rule 1.6(c)(4) provides: "A lawyer may reveal such information to the extent the lawyer reasonably believes necessary to . . . [c]omply with other law or a court order." Finally, Rule 1.6(d) provides: "A lawyer may reveal such information to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client

was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client."

In the present case, the material at issue pertains to TKB's representation of Jonathan and its representation of Marvin and Gertrude. Neither Jonathan nor Marvin/Gertrude have authorized TKB to disclose any information related to this representation. Thus, absent a relevant exception, TKB is precluded by Rule 1.6(a) from disclosing any of the material in question.

The plaintiff argues that her request for production constitutes "other law" pursuant to Rule 1.6(c)(4). While the plaintiff cites to several trial level decisions in support of her argument, she has not identified any binding appellate authority holding that a discovery request qualifies as "other law." Moreover, even if discovery requests might generally qualify as "other law" under Rule 1.6(c)(4), the plaintiff's requests do not qualify as "other law" in the present case because those requests are geared towards claims that are completely lacking in merit. To that end, TKB should not be required to disclose client information simply because the plaintiff has served discovery requests in connection with baseless claims.

Finally, disclosure of the material in question is not permissible pursuant to Rule 1.6(d) because TKB does not believe that such disclosure is reasonably necessary to establish a defense in this case.

### III.   **CONCLUSION**

For the forgoing reasons, TKB requests that the plaintiff's motion to compel be denied.

THE DEFENDANT,
TIBBETTS KEATING & BUTLER, LLC


By:    */s/ Liam M. West*
      Robert C. E. Laney (ct10323)
      Liam M. West, Esq. (ct29705)
      Ryan Ryan Deluca LLP
      707 Summer Street
      Stamford, CT 06901
      Juris No. 052525
      Phone:  203-357-9200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*/s/ Liam M. West*
Liam M. West, Esq. (ct29705)

24